MEYER WILSON CO., LPA
Matthew R. Wilson (SBN 290473)
mwilson@meyerwilson.com
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile:  (614) 224-6066

LEVIN LAW, P.A.
Jacob Polin (SBN 311203)
344 20th Street
Oakland, CA 94612
Telephone: (305) 402-9050
Email: jacob@levinlawpa.com

*Attorneys for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

TANYA ASHFORD, SOFIA POINDEXTER, CAMBRIA SMITH, and AMEE GRAHAM, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

FABLETICS, INC. and FABLETICS, LLC,

Defendants.

Case No.

**Class Action Complaint with Jury Demand**

**INTRODUCTION**

1. This case seeks to prevent a billion dollar company from obtaining a windfall at its customers' expense. Last year, the Trump Administration imposed a sweeping set of tariffs pursuant to the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq.*, which the Supreme Court recently held were unlawful. *Learning Resources, Inc. v. Trump*, 2026 U.S. LEXIS 714, *35 (U.S. Feb. 20, 2026). As the federal government has acknowledged and as the Court of International Trade has ordered, the government must now refund the billions of dollars it collected in connection with the IEEPA tariffs, plus interest. The problem is that importers overwhelmingly passed the cost of IEEPA tariffs on to consumers, but only the importer has standing to seek a refund in the Court of International Trade. Therefore, importers stand to gain an enormous windfall at the expense of consumers.

1

2. Defendants Fabletics, Inc. and Fabletics, LLC (collectively "Fabletics")—an activewear brand with over $1 billion in annual revenue—has publicly acknowledged that it responded to the IEEPA tariffs by collecting a tariff surcharge from its customers. The tariff surcharge is a discrete, line-item identified on each customer's bill. It would therefore be trivial for Fabletics to refund the tariff surcharges to its customers. Yet Fabletics has refused to make any such commitments in the wake of *Learning Resources*.

3. Plaintiffs Tanya Ashford, Sofia Poindexter, Cambria Smith, Amee Graham, and Amber Calabro are Fabletics customers who paid tariff surcharges in connection with the IEEPA tariffs. They bring this class action on behalf of themselves and all others similarly situated, seeking restitution and disgorgement of all tariff surcharges they paid to Fabletics, prejudgment interest, and other equitable relief.

## PARTIES

4. Plaintiff Tanya Ashford is a natural person who resides in Perris, California, where she intends to remain.

5. Plaintiff Sofia Poindexter is a natural person who resides in San Diego, California, where she intends to remain.

6. Plaintiff Cambria Smith is a natural person who resides in Seattle, Washington, where she intends to remain.

7. Plaintiff Amee Graham is a natural person who resides in Silverdale, Washington, where she intends to remain.

8. Plaintiff Amy Calabro is a natural person who resides in Edgewater, New Jersey, where she intends to remain.

9. Defendant Fabletics, Inc. is a Delaware corporation with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245.

10. Defendant Fabletics, LLC is a Delaware limited liability company with its principal place of business located at 800 Apollo Street, El Segundo, CA 90245.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because at least

2

**Class Action Complaint**

one member of the proposed Class is a citizen of a state different from that of Defendants; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members; and none of the exceptions under the subsection apply to this action.

12. This Court has personal jurisdiction over Defendants because their principal place of business is located in California. The claims of Plaintiffs and all class members arise from, and are closely related to, Defendants' contacts with California. On information and belief, Defendants' acts and omissions related to the decision to collect and retain tariff surcharges emanated from their El Segundo, California headquarters. It would be fair and reasonable for the Court to exercise jurisdiction over Defendants.

13. Venue is proper because Defendants reside in the Central District of California. *See* 28 U.S.C. § 1391(b)(1).

<strong>FACTUAL ALLEGATIONS</strong>

**A.      The government issues IEEPA tariffs.**

14. Beginning in February 2025, President Trump issued a series of executive orders invoking the International Economic Emergency Act (IEEPA). *See* 50 U.S.C. §§ 1701(a), 1702(a)(1)(B). These executive orders imposed tariffs on goods imported from most foreign countries, including Canada, Mexico, and China.

15. The IEEPA tariffs included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193 & 14194), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195, 14228, 14259, and 14266), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257), with higher country-specific rates ranging from 11% to 50% on 57 countries.

16. President Trump also eliminated the so-called de minimis exemption, under which goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes. *See* 19 U.S.C. § 1321(a)(2)(C). The de minimis exemption had previously allowed individual consumers to import low-value goods, such as personal purchases, gifts, and small commercial orders, without incurring any customs charges. But on April 2, 2025, President Trump issued Executive Order 14256, eliminating the de minimis exemptions for goods originating from

3

China and Hong Kong effective May 2, 2025. On July 30, 2025, the President issued Executive Order 14324, suspending de minimis treatment for goods originating from all countries, effective August 29, 2025. From then on, all imported goods—regardless of value, country of origin, or mode of transportation—became subject to all applicable duties, taxes, and fees.

**B.      Fabletics passes the cost of the IEEPA tariffs on to its customers through a tariff surcharge.**

17.      Fabletics has boasted in press releases that it is "the world's largest digitally native activewear brand." *Fabletics Debuts First-Ever Denim Collection*, YAHOO FINANCE (Mar. 10, 2026), https://finance.yahoo.com/news/fabletics-debuts-first-ever-denim-130000946.html. Fabletics CEO Adam Goldenberg announced "on January 13 that the company surpassed $1 billion in annual sales, achieved 18 percent growth in 2025, and recorded over 25 percent growth in the fourth quarter." *Report: Fabletics Surpasses $1 Billion in Revenue, Focuses on Growth of VIP Membership*, SGB MEDIA (Jan. 22, 2026), https://sgbonline.com/report-fabletics-surpasses-1-billion-in-revenue-focuses-on-growth-of-vip-membership/.

18.      Fabletics manufactures activewear—e.g., clothing, shoes, and other accessories—that it then markets and sells to consumers in the United States.

19.      Fabletics's products are largely produced in overseas factories. *See Where are Fabletics Men Products Made?*, FABLETICS (accessed Mar. 19, 2026), https://help.fabletics.com/hc/en-au/articles/360041854032-Where-are-Fabletics-Men-products-made ("[O]ur materials are sourced from all over the world, and most of our factories are located in Asia.").

20.      While the IEEPA tariffs were in effect, Fabletics imported its products to the United States from countries subject to the IEEPA tariffs prior to selling them to American consumers and therefore incurred customs charges.

21.      But Fabletics did not bear the cost of the IEEPA tariffs itself; rather, it shifted the tax burden to its customers by levying a "tariff surcharge" on consumer transactions.

22.      For example, "Erin Vandenberg is a frequent shopper with the athletic wear company Fabletics; she pays $70 a month for a membership and gets back credits to spend on outfits, like vests and fleece-lined leggings. Last year, she noticed a tariff surcharge on items, like $3.95 on top of a

**Class Action Complaint**

$69.95 berry-colored sports bra." Stephen Bisaha, *Tariffs cost American shoppers. They're unlikely to get that money back*, OREGON PUBLIC BROADCASTING (Feb. 26, 2026), https://www.opb.org/article/2026/02/26/tariffs-cost-american-shoppers-theyre-unlikely-to-get-that-money-back/; *see also id.* (noting that "managing refunds could be easier for companies [like Fabletics] that put their tariff fees right on the receipt").

23.    Fabletics has publicly acknowledged its tariff surcharge, stating to reporters from NPR that "[w]e implemented a clearly labeled tariff surcharge at checkout to be transparent with consumers and ensure we can continue providing the highest-quality products at the most competitive prices." *Id.*

24.    On information and belief, consumers paid millions of dollars to Fabletics in connection with IEEPA tariff surcharges.

**C.    The Supreme Court declares that the IEEPA tariffs were unlawful, prompting a refund process for importers.**

25.    On February 20, 2026, the Supreme Court held "that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 2026 U.S. LEXIS 714, *35 (U.S. Feb. 20, 2026). Therefore, all tariffs imposed pursuant to IEEPA are void.

26.    Importers like Fabletics who paid IEEPA tariffs are now entitled to a refund plus interest through a process known as liquidation. *See* 19 U.S.C. § 1504(b). Indeed, the federal government admitted as much in its Motion for a Stay Pending Appeal filed in the Federal Circuit. *See* Mot. for Stay Pending Appeal, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, ECF No. 6 at 28 (Fed. Cir. May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

27.    Consequently, the Court of International Trade recently held that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 32, *1 (Ct. Int'l Trade Mar. 5, 2026). In order to avoid "deny[ing] entirely importers who have not filed suit the benefit of the *Learning Resources* decision," the court has ordered CPB to liquidate all entries covered by *Learning Resources* "without regard to the IEEPA duties." *Id.* at *3. "It is

5

**Class Action Complaint**

estimated that U.S. Customs and Border Protection ('Customs') has collected approximately $165 billion in duties pursuant to the International Emergency Economic Powers Act ('IEEPA'). These duties must now be refunded with interest, and the clock is ticking. Further interest is accumulating every day, with approximately $650 million accruing per month." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 36, *1 (Ct. Int'l Trade Mar. 6, 2026).

28.     As Justice Kavanaugh anticipated in his dissent, however, the refund process raises the possibility of a windfall recovery for importers: "The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others." *Learning Resources*, 2026 U.S. LEXIS 714, *144–45 (Kavanaugh, J., dissenting).

29.     Fabletics has already passed on the costs of the IEEPA tariffs to consumers by charging them tariff surcharges, yet it is poised to obtain a refund for those same charges plus interest.

30.     Fabletics has nevertheless refused to commit to providing any sort of refund to consumers. Instead, it has stated in response to questioning from reporters that "[w]hile the Supreme Court ruling is an important development, tariffs remain in place and there are still many outstanding questions regarding implementation and potential refunds that we are closely monitoring." Bisaha, *supra*.

**D.     Plaintiffs pay unlawful tariff surcharges.**

**1.     Plaintiffs Tanya Ashford's Experience**

31.     Plaintiff Tanya Ashford is a Fabletics customer.

32.     She made multiple purchases from Fabletics while the IEEPA tariffs were in effect and therefore paid a tariff surcharge to Fabletics.

33.     For example, Plaintiff Ashford ordered several items from Fabletics in September 2025 and paid an $18.75 tariff surcharge, as seen in the following screenshot of her online order summary:

6

**Class Action Complaint**



34.    Plaintiff Ashford is entitled to restitution and disgorgement for all tariff surcharges she paid to Fabletics, plus interest.

**2.    Plaintiffs Sofia Poindexter's Experience**

35.    Plaintiff Sofia Poindexter is a Fabletics customer.

36.    She made multiple purchases from Fabletics while the IEEPA tariffs were in effect and therefore paid a tariff surcharge to Fabletics.

37.    For example, Plaintiff Poindexter ordered several items from Fabletics in August 2025 and paid an $8.60 tariff surcharge, as seen in the following screenshot of her online order summary:

7



38.    Plaintiff Poindexter is entitled to restitution and disgorgement of all tariff surcharges she paid to Fabletics, plus interest.

**3.    Plaintiffs Cambria Smith's Experience**

39.    Plaintiff Cambria Smith is a Fabletics customer.

40.    She made multiple purchases from Fabletics while the IEEPA tariffs were in effect and therefore paid a tariff surcharge to Fabletics.

41.    For example, Plaintiff Smith ordered several items from Fabletics in January 2026 and paid a tariff surcharge, as seen in the following image of her online order summary:

**Class Action Complaint**





9

**Class Action Complaint**





**Class Action Complaint**



42.     Plaintiff Smith is entitled to restitution and disgorgement of all tariff surcharges she paid to Fabletics, plus interest.

**4.     Plaintiffs Amee Graham's Experience**

43.     Plaintiff Amee Graham is a Fabletics customer.

44.     She made multiple purchases from Fabletics while the IEEPA tariffs were in effect and therefore paid a tariff surcharge to Fabletics.

45.     For example, Plaintiff Graham ordered several items from Fabletics in February 2026 and paid a $3.95 tariff surcharge on each item she purchased, as seen in the following screenshots of her online order summary:

**Class Action Complaint**





**Class Action Complaint**



46.    Plaintiff Graham is entitled to restitution and disgorgement of all tariff surcharges she paid to Fabletics, plus interest.

### 5.    Plaintiffs Amber Calabro's Experience

47.    Plaintiff Amber Calabro is a Fabletics customer.

48.    She made multiple purchases from Fabletics while the IEEPA tariffs were in effect and therefore paid a tariff surcharge to Fabletics.

49.    For example, Plaintiff Calabro ordered several items from Fabletics in December 2025 and paid tariff surcharges for $3.95, $3.95, and $6.95, as seen in the following screenshot of her online order summary:

**Class Action Complaint**

50.    Plaintiff Calabro is entitled to restitution and disgorgement of all tariff surcharges she paid to Fabletics, plus interest.

**CLASS ACTION ALLEGATIONS**

51.    Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of a Nationwide Class defined as follows:

>   All persons in the United States who paid a tariff surcharge to Fabletics, Inc. or Fabletics, LLC during the period from February 4, 2025 through February 24, 2026.

52.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following California Subclass:

>   All persons in California who paid a tariff surcharge to Fabletics, Inc. or Fabletics, LLC during the period from February 4, 2025 through February 24, 2026.

53.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following Washington Subclass:

>   All persons in Washinton who paid a tariff surcharge to Fabletics, Inc. or Fabletics, LLC during the period from February 4, 2025 through February

14

**Class Action Complaint**

24, 2026.

54. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following Washington Subclass:

> All persons in New Jersey who paid a tariff surcharge to Fabletics, Inc. or Fabletics, LLC during the period from February 4, 2025 through February 24, 2026.

55. Excluded from the Class and Subclasses are: (a) Defendants and their employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; (b) class counsel and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

56. *Ascertainability.* Defendants' sales records identify the customers who paid tariff surcharges during the relevant time period. These records will identify the members of the Nationwide Class and Subclasses.

57. *Numerosity.* Between February 4, 2025 and February 24, 2026, Defendants processed thousands of orders on behalf of thousands of customers, who are geographically dispersed throughout the United States. On information and belief, almost all of those orders included a tariff surcharge. Therefore, the members of the proposed Class and Subclasses are so numerous that individual joinder is impracticable.

58. *Commonality and Predominance.* This case presents questions of law and fact common to all class members, and those common questions predominate over any individualized issues. These common questions include:

a. Whether Defendants are entitled to retain tariff surcharges for which Defendants may claim a refund;

b. Whether Defendants' retention of tariff surcharges constitutes unjust enrichment;

c. Whether Defendants' retention of tariff surcharges constitutes an unfair business practice;

d. Whether the proper remedy for Defendants' retention of tariff surcharges is restitution, disgorgement, or another equitable remedy; and

e. Whether an award of restitution or disgorgement for the retention of tariff surcharges must include the value of any interest refunded by the federal government.

15

**Class Action Complaint**

59.   *Typicality.* Plaintiffs' claims are typical of the proposed Class and Subclasses. Like all class members, Plaintiffs paid a tariff surcharge to Defendants in connection with the IEEPA tariffs. There are no unique defenses applicable to Plaintiffs.

60.   *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs are aware of their fiduciary duties to absent class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned with (and not antagonistic to) the interests of the Class and Subclasses. In addition, Plaintiffs have retained competent counsel with considerable experience in class actions and other complex litigation. Plaintiffs' counsel have done substantial work in identifying and investigating potential claims in this action, have considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class or Subclasses.

61.   *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount-in-controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

62.   *Declaratory and Injunctive Relief.* Defendants have acted or refused to act on grounds that apply generally to the Class and Subclasses—namely, by uniformly collecting tariff surcharges from them. The final injunctive relief or corresponding declaratory relief will be appropriate respecting the Class and Subclasses as a whole.

**CAUSES OF ACTION**

**Count 1: Declaratory Relief (28 U.S.C. § 2201)**

**(On Behalf of All Plaintiffs, the Nationwide Class, and All Subclasses)**

63.   Plaintiffs reallege all previous paragraphs as if fully set forth below.

64.   An actual, justiciable controversy exists between Plaintiffs and Defendants regarding the rights and obligations of the parties with respect to the tariff surcharges Defendants collected from

**Class Action Complaint**

Plaintiffs and the class members. This controversy is not hypothetical or abstract: Defendants are entitled to recover the duty funds at issue from the federal government, the Supreme Court has declared the underlying tariffs unlawful, and Defendants have not refunded the tariff surcharges to Plaintiffs or the class members.

65.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a.    The tariff surcharges collected by Defendants from Plaintiffs and the class members were collected pursuant to tariffs that were never lawfully authorized and that Defendants have no legal right to retain;

b.    Defendants are obligated to return to Plaintiffs and the class members all tariff surcharges collected from them, together with interest; and

c.    Defendants are obligated to provide a full accounting of all tariff surcharges it collected from proposed Class members during the class period.

66.    Declaratory relief is necessary and appropriate because Defendants collected tariff surcharges in connection with tariffs that the Supreme Court has declared were never lawfully authorized, Defendants have not returned those sums to the consumers who paid them, and Defendants are eligible to recover from the government the very funds that consumers provided to Defendants. Without judicial intervention, Plaintiffs and the Class have no assurance that Defendants will return the unlawfully collected sums

67.    Class members have no alternative remedy. Because Defendants served as the importer of record, only Defendants have standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendants. Without the declaratory relief sought in this action, class members will be left without any mechanism to recover the unlawful tariffs they were forced to pay.

**Count 2: Unjust Enrichment**

**(On Behalf of All Plaintiffs, the Nationwide Class, and All Subclasses)**

68.    Plaintiffs and the class members incorporate the above allegations as if fully set forth herein.

69.    Plaintiffs and the class members lack an adequate remedy at law, particularly as to

17

**Class Action Complaint**

forthcoming refunds from the federal government to Defendants.

70. Plaintiffs and the class members conferred a financial benefit on Defendants by paying them tariff surcharges.

71. Defendants appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and the class members, as they requested that Plaintiffs and the class members pay the tariff surcharges.

72. Under principals of equity and good conscience, Defendants should not be permitted to retain the tariff surcharges. The Supreme Court has declared the IEEPA tariffs unlawful. The duties were void ab initio and were never lawfully authorized. There was no lawful basis for Defendants to collect these charges from Plaintiff and Class members in the first instance. If Defendants are permitted to retain the tariff surcharges, they will obtain a windfall at the expense of Plaintiffs and the class members.

73. Plaintiffs and the class members are entitled to restitution or disgorgement of all tariff surcharges they paid to Defendants, plus prejudgment interest.

### Count 3: Money Had and Received

**(On Behalf of All Plaintiffs, the Nationwide Class, and All Subclasses)**

74. Plaintiffs and class members incorporate the above allegations as if fully set forth herein.

75. Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendants.

76. Defendants received money from Plaintiffs and the class members in the form of tariff surcharges that Defendants billed and collected from them.

77. Defendants received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as lawfully assessed duties on imported goods. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized, rendering the predicate for Defendants' collection void ab initio.

78. The consideration for these payments has failed in whole. Plaintiffs and the class members paid Defendants to satisfy a duty or obligation that never lawfully existed.

**Class Action Complaint**

79.     In equity and good conscience, Defendants should not be permitted to retain these funds. The money belongs to Plaintiffs and the class members, and Defendants are obligated to return it.

### Count 4: Violation of California Unfair Competition Law

### Cal. Bus. Code § 17200, *et seq.*

### (On Behalf of Plaintiffs Ashford and Poindexter, the Nationwide Class, and the California Subclass)

80.     Plaintiffs and members of the Class incorporate the above allegations as if fully set forth herein.

81.     Defendants engaged in unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

82.     Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendants.

83.     Defendants' business practices were unfair, particularly because they shifted the burden of potential compliance with the tariffs to Plaintiffs but retained all benefits for themselves, including the fund of the tariff, even though that money was Plaintiffs' and is owed back to Plaintiffs. They are also continuing to retain funds that rightfully belong to Plaintiffs.

84.     Defendants' retention of tariff surcharges despite their eligibility for a refund from the federal government is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm.

85.     As a result of those unfair business practices, Plaintiffs and the class members suffered an injury-in-fact and have lost money or property—specifically, the tariff surcharges they paid to Defendants.

86.     The injuries to Plaintiffs and the class members greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

87.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

88.     Therefore, Plaintiffs and the class members are entitled to equitable relief, including

19

**Class Action Complaint**

restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of their unfair and improper business practices; an order declaring Defendants' conduct an unfair business practice; an injunction requiring Defendants to pay any refunded tariff surcharges back to Plaintiffs; and any other equitable relief the Court deems proper.

**Count 5: Violation of Washington Consumer Protection Act**

**Wash. Rev. Code Chapter 19.86**

**(On Behalf of Plaintiff Smith and the Washington Subclass)**

89.    Plaintiff Smith and members of the Washington Subclass incorporate the above allegations as if fully set forth herein.

90.    The Washington Consumer Protection Act ("WCPA"), Washington Revised Code Section 19.86 et seq., prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

91.    The elements of a WCPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) an injury to plaintiff in her business or property, and (5) a causal relationship between the unfair or deceptive act and the resulting injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535–40 (Wash. 1986).

92.    Defendants engaged in unfair or deceptive acts, omissions, and practices in the conduct of trade or commerce, in violation of Section 19.86.020, by retaining tariff surcharges despite their eligibility for a refund from the federal government.

93.    Defendants' conduct was unfair. By retaining tariff surcharges despite their eligibility for a refund from the federal government, Defendants have obtained windfall profits at the expense of consumers. Defendants' conduct violates common-law and other established concepts of unfairness and was immoral unethical, oppressive, and unscrupulous. Defendants' actions have caused substantial injury to consumers, as consumers have paid additional money to Defendants in connection with tariffs that had no lawful basis. That injury was not reasonably avoidable, and there are no countervailing benefits to consumers or competition.

94.    Defendants' conduct occurred in connection with trade or commerce.

20

**Class Action Complaint**

95. Defendants' conduct harms the public interest by providing them with windfall profits at the expense of consumers.

96. Defendants have injured Plaintiff Smith and the Washington Subclass, as they have lost money due to paying the tariff surcharges.

97. Defendants' conduct was the direct and proximate cause of the injuries suffered by Plaintiff Smith and the Washington Subclass.

98. Plaintiff Smith and the Washington Subclass seek applicable damages, statutory treble damages, equitable relief, injunctive relief and reasonable attorneys' fees under Washington Revised Code Section 19.86.090.

### Count 6: Violation of New Jersey Consumer Fraud Act

### N.J. Rev. Stat. § 56:8-19

### (On Behalf of Plaintiff Calabro and the New Jersey Subclass)

99. Plaintiff Calabro and the New Jersey Subclass incorporate the preceding allegations by reference.

100. A claim under the New Jersey Consumer Fraud Act has three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009).

101. Defendants committed an unlawful act by retaining tariff surcharges despite their eligibility for a refund from the federal government, thus allowing Defendants to obtain windfall profits at the expense of consumers. Defendants' conduct reflects a lack of good faith, honesty, and fair dealing. Defendants' conduct therefore constitutes an unconscionable consumer practice.

102. As a direct and proximate result of Defendants' unlawful acts, Plaintiff Calabro and the class members suffered ascertainable losses in the form of improper tariff surcharges.

103. Therefore, Plaintiff Calabro and the New Jersey Subclass are entitled to equitable relief and damages in an amount to be determined at trial

### PRAYER FOR RELIEF

104. Plaintiffs and the class members demand a jury trial on all claims so triable and request

**Class Action Complaint**

that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel as class counsel;

B.    Declaring that Defendants are obligated to refund to Plaintiffs and the Class all tariff surcharges it collected from them in connection with IEEPA tariffs, and that Defendants are required to provide a full accounting of all tariff surcharges they collected from proposed Class members in connection with the IEEPA tariffs;

C.    Awarding damages, disgorgement, and restitution to Plaintiffs and the Class for all tariff surcharges they paid to Defendants and disgorging any refunds Defendants will receive from the federal government;

D.    Awarding attorneys' fees and costs;

E.    Awarding prejudgment and post-judgment interest; and

F.    Granting such further relief as the Court deems just and proper.

## JURY DEMAND

105.    Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 3, 2026                         Respectfully submitted,


                                             By: /s/ *Matthew R. Wilson*

                                             MEYER WILSON WERNING CO., LPA
                                             Matthew R. Wilson (290473)
                                             mwilson@meyerwilson.com
                                             305 W. Nationwide Blvd.
                                             Columbus, Ohio 43215
                                             Telephone: (614) 224-6000
                                             Facsimile: (614) 224-6066


                                             LEVIN LAW, P.A.
                                             Jacob Polin (SBN 311203)
                                             344 20th Street
                                             Oakland, CA 94612
                                             Telephone: (305) 402-9050
                                             Email: jacob@levinlawpa.com

                                             *Counsel for Plaintiffs and the Proposed Class*

22

**Class Action Complaint**